Our next case for argument is 24-1099 Aviation Capital Partners v. SH Advisors. Mr. Friedman, please proceed when you're ready. Good morning, Your Honors. May it please the Court? My name is Josh Friedman, and I'm arguing for the appellant Aviation Capital Advisors, who also goes by Specialized Tax Recovery, or STR. The District Court erred in finding that the 988 patent was ineligible for three reasons. First, it admitted that the claims at least recite a practical application of an abstract idea. Second, it disregarded the Patent Office's factual finding that the claims had sufficient inventive concept. And third, it found that the claims as a whole are directed to an abstract idea, one different than both CITUS Talk and the Patent Office had asserted, while ignoring physical structure and inventive concept in the claims. These errors warrant reversal. The District Court expressly found that the claims recite a practical application of an abstract idea. In fact, the claims here are so narrow of an application that there seems to be zero chance of preemption for future innovators. And are you applying that practical application to the Step 1 inquiry, as to whether or not it was an abstract idea, or to the Step 2 inquiry? That's a good question. I think it's more applicable under the law of this Court to Step 2, as to whether or not there was inventive concept. But as we've talked about in our briefs, there are cases that seem to apply that. I'm confused by it, because doesn't the PTO guidance, which you also place a lot of emphasis on, do it on Step 1 and not Step 2? It's Step 2A, I believe. Which under the PTO, is that Step 1 or Step 2? The PTO renumbers the rules in an incredibly confusing way. I agree. Well, which is it under our law? Is it Step 1 or Step 2? Under our law, under the law of this Federal Circuit. How do you correlate what the PTO is saying it comes under to our law? Not where you think it should be under our law. I believe the law of the Federal Circuit is that Step 1 is the claim directed to an abstract idea. That's Step 1. And Step 2 is... And PTO applies that practical application test to our Step 1, don't they? In their Step 2A, is when they apply it. Which is Step 1 of an abstract idea.  Step 1. It is Step 1 in this court. And I think what we said in our brief, too, is... When you say in this court, I mean, we've got cases. I mean, don't a lot of the 101 cases we have involve, is it given a practical application? No, I think a lot of cases actually have found that there is not a practical application of the abstract idea. How do you explain Mayo if this is actually enough to save a claim from 101? Mayo is an abstract idea that's incorporated into a practical application of a test. In fact, almost every diagnostic test case we've found ineligible has a practical application of the natural law. Why is that practical? I mean, this is coming from the PTO, right? We don't have to pay any attention to what the PTO says anyway. But I don't even understand how this practical application test is consistent with the Supreme Court precedent on this. Right, I think you have to be a little more specific as to what the practical application is here. And so I think it may be helpful if I read the PTO's explanation in this case as to what the practical application was. And what the PTO said was, and this is on page appendix 430, paragraph 12. The PTO said the claims teach both a practical application and significantly more in determining that an aircraft landed at an airport based on speed or altitude data during a time when the location of the aircraft was indeterminate. And that piece of the claim is within a broader claim, right? That's not the entire claim. Okay, so here's one of my problems. One of my problems, I'm just going to walk you through in a very practical way and you can tell me what is wrong with my concern. Forget about what the PTO said right here in paragraph 12. In your complaint, you said only one sentence about the PTO decision. It's paragraph 17. You're familiar with it? Yes. Okay. You said, as the PTO found, the claims of the 988 patent are not directed to an abstract idea. Is that a question of law or a question of fact? Under this court's test, the abstract idea of wrong is a question of law. Question of law. So there's no deference given to anybody for a question of law, correct?  Okay. The second thing you said, you said two things in a sentence. As the USPTO office found, the claims of the 988 patent are not directed to an abstract idea and are patent eligible. The ultimate conclusion of patent eligibility, is it one of law or fact? It's a question of law, Your Honor. So the only thing you've said in your entire complaint about the PTO decision that was made during the prosecution process, is that the PTO made two legal determinations. That's it. You say nothing else. Am I missing something? I think what's missing, Your Honor, is that that determination was based on an underlying question of fact that was resolved at the PTO. That your complaint didn't allege. For a Rule 12, I look at the four corners of the complaint and I accept it as true. I accept as true the two PTO legal determinations that you referenced in the complaint. How do you prevail? And why the heck didn't you even ask to amend your complaint? I don't understand the lawyering. I can't answer the second question because I was not involved in that. But what I can say is, the other issue here is that there were two parallel motions for 101 that were going on at the district court. There was the motion to dismiss by... What does any of that have to do with my point? You make only... The complaint is the four corners of all I'm allowed to look at it for 12B, correct? Well, the court looked at more than that. I didn't ask you what the court did. According to our law, according to every regional circuit law in the country, what presents the four corners of what you look at at the 12B stage? What's in the complaint and also attachments to the complaint.  Okay, but you didn't attach the prosecution history of the complaint here, correct? There's case law that says... Did you attach the prosecution history of the complaint? No. No. So under our law, we look at the complaint. The only thing you say about what happened at the PTO are two legal conclusions the PTO made. I'm now struggling to see how the district court somehow erred in failing to give deference to the PTO, which is your argument on appeal, when the only two things you reference in the complaint are two legal conclusions that were made by the PTO. And again, I will say that under the case law, the court is allowed to give judicial notice to the prosecution history and did in this case. And STR or CITESOC did not object to that. They, in fact, also asked the court to take judicial notice of the prosecution history for other reasons on the motion to dismiss. So the prosecution history is part of the public record for the patent, and it should be considered on a motion to dismiss. There's no reason why the entirety of the public record of the patent should not be considered. The only thing you alleged in your complaint are two legal determinations by the PTO. Where is there an allegation in your complaint that the district court failed to give deference to? I would again say that that is included within the allegation that the claims are not directed to an abstract idea. So now from now on in a complaint, when somebody says my claim is obvious or my claim is not obvious, I am supposed to kind of like a black box jury verdict, assume that a lawyer who knows how to plead nonetheless failed to do so. And I should just give the lawyer the benefit of every fact finding that possibly he or she could argue but didn't actually argue? Well, the problem with that, Your Honor, is that- There's a lot of problems with that. I'm glad that you see at least one. Yeah. Patents are presumed valid, right? And for obviousness, that's never been a problem. You don't need to allege that your patent is not obvious in your complaint, right? For some reason, there has developed some suggestion that there needs to be a specific allegation in your complaint that your patent is eligible. Even though, again, patents are supposed to be presumed valid, right? So our position would be that that is incorrect. You shouldn't have to allege that your patent is valid in your pleading because it's already presumed by law. Your argument on appeal is the district court erred by failing to give deference to PTO fact findings. We're not having some lofty discussion of what patentees ought to have to prove or not have to prove. I'm focusing on the argument you made in your brief, which is the district court failed to give deference to a fact finding. I don't see any allegations in your complaint that track that. So I'm having a hard time finding a district court guilty of having done something wrong when you didn't make the allegations. Okay. And I just want to point out that's only one of our arguments on appeal as to why this should be overturned. So if the court doesn't agree that it's included in the allegation that the PTO's ultimate conclusion should be upheld, then we have other reasons also, right? That no matter what's in the PTO's findings, the claims are not directed to an abstract idea, and that they are directed to a practical application, no matter what the PTO says. It's just manipulation of data. I don't see anything else. And this wacky idea you have about how it's some special transponder, I don't see that in the spec. I don't see that in the claims anywhere. I don't see anything in these claims except manipulation of data. It is in the spec. What am I missing? It is in the spec. Show me what I'm missing in the claim. Tell me in the claim where the claim itself is doing something other than simply manipulating data. It is in the specification and in the claims. In the claim. Just show me where in the claim. I will turn to second. So it's specifically in dependent claims. For example, dependent claim 13. Sorry, that's independent. Independent claim 13 specifically recites a receiver positioned in proximity to an airport, configured and disposed to receive transponder data from an automatic dependent surveillance broadcast ADS-B transponder mounted on an aircraft. So that is the specific ADS-B transponder. So that's it.  You're not claiming that. You didn't invent that, right? That is part of the claim, right? You're claiming the data that this outputs. No, no. We did not invent the data that it outputs. But as we said in our briefs. You're claiming the use of the data it outputs. We are. And this is, again, a new. At the time the patent was filed, this was a new device. This was not a device in widespread use. And there's a lot of evidence in the record for that. So you're claiming invention of the device? The device is part of an invention. It's a tool. A tool. But was it in existence? Did you invent it? Are you claiming the invention, the creation of this? We are not. But the issue here is not whether the claim is inventive. The issue is whether it's an abstract idea. And not patent eligible. And the question there is if there are physical components within the claim. The question is whether those are ubiquitous or common. Such that the use of them. So your allegation is that this wasn't routine. And the use of the transponder was not routine? Absolutely. And it's not just our allegation. There's a declarant from CITESOC, from the appellee, that specifically says that. That says that these were not in wide use at the time that the patent was filed. So I think the record is pretty clear that the use of ADS-B in any respect was not something that was conventional at the time the patent was filed. It's still data. I mean, this could all be done by pencil and paper, couldn't it? If you get the data from the air traffic control, you get the data from this new transponder, and then you figure out the tax laws and all the jurisdictions, you can do this by pen and paper. It's going to take a long time. So maybe the software that you created to implement this has a business purpose and can be used. But that's never been enough to get it over a 101 hump in our court. I disagree with that, Your Honor. The test is not whether it could at some point be done with pencil and paper. Anything that's done on a computer could be done with pencil and paper with enough time and effort. The issue is whether you are just taking something that's an idea and saying do it on a computer, or taking something that was already known in the past and then just making it faster or better on a computer. And that's not the case here. How are you not saying take information and do it on the computer? You don't say anything. First of all, what the computer is even doing is very abstract here. It doesn't even tell you how it does it, what it's doing, what kind of tax laws. I don't even know what tax conclusions it's coming up to with regard to these claims. You have no specificity whatsoever in how you're using this data. You're saying take this data, feed it into the computer, and it spits out more information. Again, I disagree with what the Patent Office found, and what we would say also is that the specific use of speed and altitude data to determine where an aircraft landed during a time where there was a gap in existing FAA records, that that is something that is new and unique. It was not something that was done before, and it is not something that is simply being applied on a computer. That in itself is an inventive concept that is enough to confer eligibility. And I'm into my rebuttal time, so I don't deserve the remainder of my argument for rebuttal. No problem. We'll save the rest for rebuttal. Thank you. Mr. Gibson. Good morning, Your Honors. May it please the Court. I would like to start where my opponent left off, addressing the relevance of the transponders to the claims here. This was something that STR made a big deal about in the briefs and has emphasized again. In the district court, STR expressly disclaimed the reliance on the transponders to provide patent eligibility. And so I'm referencing here, it's Appendix 450. It's briefing of the district court on the Section 101 motion to dismiss. And there, what STR has told the district court is, this court should not be distracted by elements like generic computers and transponders, which form no part of STR's argument that the claims are patent eligible. So in the district court, STR did not rely on transponders. They strictly relied on this idea that determining whether or not an aircraft landed based on speed or altitude data was inventive. I was also sitting here struggling a little bit, going back and forth actually with my law clerk up there. I didn't see this Claim 13 argument in their blue brief. Am I missing it? Was this made and I missed it? No, you're correct, Your Honor. The parties have agreed since the district court that Claim 1 was representative. Okay. And so Claim 1 is the only claim that has been briefed here. Makes me feel a little better. Thank you. Yes, Your Honor. Can you tell me the specifics of this? Is this just figuring out where the airport is at different periods of time because different states have different tax laws regarding aircraft? I don't even understand from the claims what the point of this whole invention is, but it seems to be trying to figure out, the airport's sitting on the ground at this airport, the airport's sitting on the ground at this airport from these days to these, and then you can put all that data together and you have somehow fed all the tax laws of all the 50 states into a computer and it spits out, here's your tax liability. Is that what it's doing? Yes, Your Honor. I think that is the gist of the invention here. There's an existing database that comes from the FAA of information about where aircraft have- And so presumably state tax is based on the amount of time the aircraft spends within the state boundaries. That is one way that it gets calculated. This is actually state, county, and there's even localities that have their own mechanisms. Some of it's property tax, some of it's use tax. But it's based on the amount of time the aircraft remains on the ground. It can be based on time. That's what they're trying to get at here, right? Yes, Your Honor. They're collecting data from two different data sources, combining it and then outputting some information about taxability status. That is the essence of the claims. That is correctly what the district court found the claims are directed to is collecting and analyzing information which- And this all had to have been done before because the tax laws were in existence before. This is just using different data to come up with the same information. Yes, Your Honor. If you were taxing aircraft, you were having to get the information from somewhere. It could have been a person on the ground observing aircraft, taking off and landing from the airport and using that information to then tax the aircraft. But this is just a different source of data to accomplish the same thing that a human could have been doing with pen and paper. In fact, the claims, except for the fact that they- Representative Claim 1, except for the fact that it recites that it's computer implemented and the computing by a computer step recites a computer, this could all be done by a human. There's nothing in the claims that inherently requires that a computer be doing it. So this is just taking a computer and improving the process through the use of the computer, which this court in multiple cases has found is insufficient to establish patent eligibility at either Step 1 or Step 2 of ALICE. I'd like to briefly turn over- There's two other points that STR made at the beginning, and I'd like to address those very briefly. The first is this idea that the district court, in its analysis, made this reference to a practical application, and that somehow should have stopped all the analysis and rendered the claims patent eligible. This court has said on a number of occasions that a practical application is insufficient to establish patent eligibility. So, for instance, in the Kamitsky decision, which we cited in the briefing, this court said mental processes are not patentable even if they have a practical application, and that follows naturally from the Supreme Court's precedents, such as Fluke, where- Well, they cite at least one case, BASCOM, right? What about the case that they cite? Yes, Your Honor, they cite one case, BASCOM. The court there did not find that the claims were patent eligible merely because they had a practical application. That citation is to the very conclusion of the opinion where the court makes reference to the fact that there was a practical application, but the finding of patent eligibility in that case was not based merely on a practical application. It was based on a Step 2 analysis where the district- I'm sorry, where this court addressed the fact that it was inventive where the filtering tool was located, and here we don't have anything of that nature that some tool, some physical thing is located in a- I mean, we don't have to follow or give any deference to PTO guidance, correct? Correct, Your Honor. This court, I think- To the extent it's confusing and we don't really understand it, it seems at times to be at odds with some of our cases, it's kind of irrelevant, right? Correct, Your Honor. This court's opinions control the outcome here, and this court has clearly stated in the Kaminsky decision that a practical application on its own is not enough. We think the district court was only commenting- I don't know what that means. I don't think you've stated that right. A practical application on its own is not enough? What are you talking about? A claim to a practical application on its own is not enough? You mean a claim that is directed to an abstract idea is not enough? A practical application claim- there's no law that says a practical application is ineligible. Yes, Your Honor. I apologize. I was perhaps incorrectly paraphrasing the Kaminsky decision. It said mental processes are not patentable- There you go. Even if they have practical application. Correct. Very good. Thank you, Your Honor. The last thing that my opponent brought up, and I think we've already addressed this to some extent, but is the idea that the district court should have deferred to the fact finding of the PTO. We do not believe that STR did enough in its complaint to even incorporate any of that into the allegations that are here. But even if those allegations were lifted and put into the complaint, they would not be enough. So in the International Business Machines decision cited in the briefing, the court explained that a court is not required to accept conclusory allegations of inventiveness. And that is all that the examiner provided in his analysis that STR now cites, which is at Appendix 430, Paragraph 12. All it merely says is the claims teach both a practical application and significantly more determining that an aircraft landed at an airport based on speed or altitude data during a time when the location of the aircraft is indeterminate. That is alleging that the claim is inventive for that reason, which is not enough. Unless there's any further questions for the court, we'll sit down and give our time. Thank you. Don't do this. Don't do this. Don't make a bad move. We have support to affirm. No. I was trying to say it without putting it on the record. Don't make a bad move. Anyway, go ahead. Give him a little time. Thank you, Your Honors. I just want to make two quick points in response. First, the claims do not just claim, they don't claim using different types of data to do something that was already done before. The problem was that the existing method, the existing data, had gaps in it that lost tax revenue. And so what the patentee did here was that they took this new tool that provided a different kind of data that was not available for this sort of thing before, and they used it in a way where they took these two elements, speed and altitude, and could then determine from that where airplanes were during these periods of time when in the old data there were gaps. And so that was a new and useful way of using this new tool in order to improve prior art methods. Second, and following on to that, the notion that we did not address transponders below before the district court is just not true. We did it repeatedly within our briefing in appendix pages 446, again at 447, again at 448, and again at 449, and then during the hearing, which was a joint hearing on the motion to dismiss and the preliminary injunction, at appendix 520 there was a discussion between the court and our counsel explicitly talking about this ADS-B transponder and why it was new and specialized. And if there are no further questions, then I'll take my leave of court. Thank you. I thank both counsel. This case is taken under submission.